The next case for the day, 2023-40424 Anil Kumar Gupta and Pooja Gupta at all versus Ira M. Jaddou and Blinken at all. And you may proceed. Thank you, Your This case has the benefit of, I think, a more traditional opinion, right? The Bakane case, it was all a transcript and that's fine. Here, it's 100%, and this one and the next case, are 100% based on Lee, the case that is an unpublished case from this court last spring. First, I don't have to tell you that unpublished cases from this district or from this court carry no weight going forward. The second thing- Well, they might be persuasive authority. Fair, Your Honor. That's- Persuasive authority. We don't treat them as typical precedent that could be- They're not precedential if they're post a certain time period, which these are, but they carry persuasive authority. But you're here to say Lee is wrong. Yes, that's correct. With all due respect to Judge Willett, who was on the panel. Yes, we were aware of that coming in today. Join the club. So, why is Lee wrong? Lee requires a- First off, Lee is an unreasonable delay case. That's first. So, not an unlawful withholding case. So, you're saying Lee is not applicable and the district courts were wrong to latch on to Lee? 100%. I would also say that Lee made the mistake of unlawful withholding typically requires a deadline in the statute. Could Lee still exist in your world that you're going to ask us for? Or does Lee have to be abrogated in some fashion for you to prevail? I think it can stand just fine because, again, it's an unreasonable delay case or unlawful withholding. And again, I point you to the Forest Guardians case because, again, it's just a really well- it explains these very niche issues. And basically what it says is what distinguishes between an unlawful withholding and an unreasonable delay case is either an outright refusal, which we don't typically see, or a deadline, right? And this is how I think of 706-1 unlawful withholding is a much more traditional mandamus case, right? In a mandamus, you have to have a deadline, mandatory duty, and they have to violate it. But that means in a mandamus case, you know, if it's a 10-day deadline, day 11, you have a mandamus. Unreasonable delay cases, if it's- if there's no deadline, you have to see if that's reasonable to take 30 days, 11 days, 4 days, whatever it is. And so I think that's the mistake in Lee, is that it brought this requirement from unlawful withholding and applied it to the unreasonable delay context. And again, with all due respect, it's the only circuit court opinion I can find that does that. The other circuits have, most recently in D.C., a case called Da Costa, addressed it and rejected it. And again, that was an unreasonable delay case. If we were to say that Lee is what applies in this context, and we would be, and we did the reasoning of that in this context, would we be creating a circuit split? Yes. Yes, you would. With? The 4th Circuit, the 6th Circuit, the D.C. Circuit, the 9th Circuit, and the 10th Circuit. So Bavaria is different? Bavaria, yeah, it addressed the unlawful withholding, it didn't require a deadline, and it found no issues with jurisdiction. This would be with Gonzales-Cuccinelli? Yes, Your Honor. Is that right? Gonzales-Cuccinelli in the 4th Circuit. And Barrios-Garcia in the 6th Circuit, and a couple of others. Is that right? Correct, Your Honor. Have you and Ms. Faso argued every single one of these cases? Because I'm just looking at who's arguing the cases, and it's you and Ms. Faso. Yes, Your Honor. We have to stop meeting like this. But I consider myself lucky to have such qualified colleagues. That was a good response. And that is good. And in fact, we've been sitting at a school this week, and this shouldn't take away from your time, but you have lots of time. Have we been sitting at a school this week, and one of the lessons is that people are their friend on the other side, and that you can disagree vigorously and then buy each other a cup of coffee or something, and that's a good thing, in the practice of law, I think, especially when you see people on a repeat basis. Your Honor, I live in Charleston, South Carolina, and civility, whether it's genuine or not, is highly prioritized. Indeed. So you don't think we should follow Lee in this context, because you think we create a circuit split, but do you... I think the easiest way is to distinguish it. That's an unreasonable delay case, this is an unlawful withholding case, and that's that. And so then you either win or lose for the same reasons you argued in the previous case? Yeah, the previous case being... The one you just had here, or first thing this morning. Yes, Your Honor. I mean, I think... Do you have any new arguments that are applicable in that? Again, this one had an opinion, so I wanted to address Lee. I don't think it's appropriate. But no, the briefs are identical. We moved to consolidate these, and I understand the court didn't want them to consolidate, which is perfectly fine, but the briefs are nearly identical. Again, I would urge you to ask the government to distinguish between available and immediately available, because those terms feel very similar. It's like modifying the word, right? But in this immigration context, they're two totally different concepts. And again, what I heard my colleague say is that, yeah, there are visas available right now. They're not immediately available to Mr. Bakane, or excuse me, Mr. Gupta, but they are available. And nothing, no statute, regulation requires there to be an immediately available visa at approval. Describe, sort of itemize, catalog the harms that your clients are suffering as a result of the agency not taking action. They're not permanent residents. That's the first thing. So they are deprived of all of the benefits that are exclusive to permanent residency. They can travel. However, it's subject to the agency's processing times. Processing times for advanced parole are over 14 months. You can only apply six months early. So you have a necessary gap of eight months where these folks can't travel. That's a problem. Work authorization has those same issues. The agency's done, taken some steps lately to increase the length of them, which is great. However, that's a significant problem. It also ties him up and puts at risk his ability to freely change positions. Permanent residents are not tied to a particular employer. H-1Bs are. And so I do not think a court who we've argued in front of has said, no, there's no difference. There's not a meaningful difference. I do think there is, and I don't think the government would disagree with me on that. And so that's why we're here. A green card is an incredibly valuable asset and set of bundle of rights, whatever you want to call it. Again, the Guptas have been here 15 years because of where they were born and because of what Congress has done, not judging that. They don't have a green card. They should be citizens by now if they were born in England or any country other than India. And again, that's how the system works. That's fine. I'm not here to argue that. But this is a significant benefit to them, and they wouldn't be challenging this around the country if it wasn't. And again, I guess I don't want to take up more time because these are three very similar arguments. But I just think this is a pure text structure history. I think that answers the jurisdictional questions. I think it answers the merits questions. Is there anything special? I mean, obviously, they're unique individuals. But is there anything different factually about this case? No, not a fact that makes a difference. And I will say, my colleague said that we're trying to change the system. We're not. All I'm asking for is an order to compel a decision on these clients' applications. And again, if they deny them, I think that's an unlawful, arbitrary denial because it's going to violate the law. And maybe that's how we have to go up through. They'll never get put in removal proceedings, so they'll never have that ability. Circling back to Judge Alron's question earlier, if we compel the agency to adjudicate the claims, it does run the risk of the agency feeling compelled to deny the claims. And then what? I think inherent in any decision, ordering them to compel would have to be a statement, a declaration, that Congress does not require there to be a visa immediately available at approval. I think that would have to be a holding. And so if that's a holding, and then the agency goes and denies the visa, or excuse me, the green card application in violation of that order, that would be a significant problem. So this idea that they could just go deny it, I think is a little bit of a red herring in your arm. The only other thing I wanted to mention is this regulation. The agency keeps talking about this regulation. And the regulation doesn't require there to be visas immediately available at approval. Which regulation? This is going to be 245.2A4. This is the regulation that Bavaria relied on. It said, the portion of it that matters says, the application shall not be approved until an immigrant visa number has been allocated by DOS. That only requires a visa to be available, not immediately available, not current. And so again, I think the government has a very hard time of pointing to a statute or regulation that actually says their position. And for those reasons, again, I also think the regulation came out 12 years before Congress repealed it, repealed this requirement. And so I'll leave you with this, that the consequence of affirming the government here would mean that Congress can repeal an eligibility criterion and the agency can re-implement it through rulemaking. That seems very problematic to me. That seems like a separation of powers issue. We have this House report. Whether that's valuable or not in the tech structure history, I leave to you. But they identified it. That's a rarity, right, when you look at legislative history. They identified this very specific thing and said, this is what we're doing. And then the agency, through this INS opinion they mentioned, just said, we're not going to do it. Are we not talking about the track factors? Because that would be in the first category that's more like the mandamus. I think the track factors would be in the unreasonable delay case. And so that's why I don't think they're relevant either. Remember when we did the, it's like mandamus versus not. Yes, Your Honor. That's right. And I will just say, I do think there's a way to, again, he has a second cause of action for unreasonable delay here. I don't think we reached it. But I do think there's an opinion this court can write that says, look, we think this is unlawful, but we're not ready to compel it. We want you to determine whether this is an unreasonable delay. But you're not really pressing that. No, I'm not. Why are you not pressing that? You think it's a less argument. That's why you're not pressing. I would be glad to take that decision. However, again, I think the difference between unlawful withholding, unreasonable delay is partially remedy. Remedy of an unlawful withholding is in order to compel. And we do not look at equities. We do not look at factors. You're refusing to make a decision that's unlawful. Make the decision. And so that's what I'm asking for. Okay. No other questions, I will. Anybody have any questions in this? Okay. You have saved time for rebuttal again, I think. Thank you. Thank you. Good morning, your honors. May it please the court. My name is Alessandra Faso, and I represent the government in this matter. This court should affirm the district court's decision for two reasons. First, as was alluded to earlier, there are a number of impediments to subject matter jurisdiction, including AUSC-1252-A2B, a fatal flaw in the Gupta's ability to establish jurisdiction under the Administrative Procedure Act, and finally, their inability to establish standing. May I ask you, Ms. Faso? I noticed you argued Barbaria in the Ninth Circuit. Yes. The decision did not turn on standing or 1252? No, your honor. We did not argue 1252 or standing in that case. And the reason being, there's no meaningful, to anticipate a likely question, there's really no meaningful distinction between that case and the case before you all today. The Patel decision from the Supreme Court had recently come out as we were going through the briefing in the Barbaria case, and so we were kind of still teasing out those jurisdictional issues as to how 1252 applied to the issues before you all today. And even if this court found subject matter jurisdiction and disagreed with the district court, your honors can affirm the district court's decision because on the merits, the way that the Guptas are interpreting 8 U.S.C. 1255 is contrary to the plain language of the INA and is contrary to congressional intent. And so I'll begin by addressing the deficiencies in subject matter jurisdiction based on 1252. As Judge Duncan noted, 1252 precludes jurisdiction in the government's position under both subsections. So subsection A1 precludes judicial review of any judgment regarding the granting of relief under 1255, among some other subsections. Any judgment regarding the granting of relief necessarily includes judgments made by the agency as to when to allocate or issue a visa to an applicant, when a visa number attaches to an application, and whether an application can be approved in cases like this where a visa number is not available. Those are precisely the types of judgments that this court cannot review. Under subsection 1. And that's a judgment or discretionary decision? Does it matter what words you're using there? Right, your honor. And even jumping to subsection 2, which, as you all noted earlier, is more broad and uses the term any other decision or action that's in the discretion of the Secretary of Homeland Security regarding the granting of relief of adjustment of status. What if the agency decided, as a matter of discretion, to stop processing applications altogether? Could it do that? Theoretically, under this provision, yes. We couldn't review that? No, your honor, because 1252 begins with notwithstanding any other provision of law, these decisions and actions and judgments are committed to the discretion of the agency. And now, in practice, the agency wouldn't necessarily do that. But even looking to 1255A, all of those judgments relating to adjustment of status are committed to the discretion of the Attorney General. So, hypothetically, it may sound far-fetched, but let's say the agency decided, as a matter of discretion, not to take action on applications by people from certain specified countries or religious backgrounds. Are you saying we lack jurisdiction to consider a complaint even then? Based under the plain language of 8 U.S.C. 1252, A to B, yes. Even with invidious discrimination? Judge Alrod, I believe that, at that point, there would maybe be other claims. I think his hypo is invidious discrimination. That's what he was saying. Certain countries, certain people groups, certain religions. Invidious discrimination, would we have jurisdiction? Or does this statute preclude jurisdiction? 1252 is pretty broad, and so it would likely preclude jurisdiction to review those types of decisions or actions. But that is not what is before this Court today. It's just a hypo. These hypos sound very menacing and disturbing. However, the immigration system, as it stands today, puts caps on people from different countries, doesn't it? That's correct. I'm sure that's being challenged as we speak, as invidious discrimination on 15 different grounds. But that's what the immigration system does. That's correct, Your Honor. There are proposals to get rid of all those per country limitations and kind of make it an even playing field, regardless of what country you're from. Yeah, I think the hypo was not just, maybe it was originally a country you're from, but I was trying to opine based upon your religious belief within a particular country or the color of your skin or your sex. That's the hypos, which is not the same thing as I'm from England, I'm from India, I'm from Jamaica, or wherever else you want to pick in the world, Russia, whatever, which may have particular safeguards on those issues. Sure. Again, the plain text of subsection A in 1255 is that Congress has chosen to commit to the Secretary of Homeland Security that discretion in whether or not they're going to approve an adjustment of status application. You went through this a little bit earlier, but can you pinpoint for us exactly the discretionary judgment or the decision or the action that you say bars federal jurisdiction? So what exactly are you saying is discretionary? The discretionary decision here is the decision by USCIS to allow adjustment of status applications to remain pending when during the pendency between the filing of that application and before it's able to be processed, when an immigrant visa becomes unavailable based on the visa bulletin. The action is that USCIS is making a judgment call and saying, okay, just because a visa became unavailable during this processing at no fault of the applicant does not mean that you are no longer eligible for adjustment of status. And so in order to alleviate any hardship by denying that application, making them wait potentially years to even get that application refiled, as my colleague noted, stripping them of those interim benefits. And in certain cases, applicants for adjustment of status don't maintain their non-immigrant status because they don't necessarily have to. So potentially stripping them of their lawful status of the United States. So Judge Willett, to answer your question, it is that decision to allow those applications to remain pending while the application processes and as the State Department is figuring out the priority dates and the cutoff dates. If we were to adopt the reasoning of the District Court, would we be creating a circuit split to the extent we haven't already created, to the extent there already isn't one or not? Your Honor, something that the District Court did here, instead of ruling as this court ruled in Lee that it was a failure to state a claim issue with respect to the timing, whether or not there was a specific time period in which the agency needed to adjudicate an adjustment of status application, the District Court in the Gupta case considered it as a factor. So I don't necessarily think it would be a circuit split. If we did what the District Court did as opposed to saying Lee full on. So there wouldn't be a circuit split if we did what the District Court did. Is that what you're saying? Yes. If we said Lee is correct and followed that, would that be prolonging a circuit, exacerbating a circuit split? It doesn't mean that that's not the right thing to do because it could be that our circuit's right and the others are wrong and they need to percolate. It's all the same case. What now? So I'm just curious. Yes. It may create a circuit split. So if we said Lee straight up here today, that would exacerbate the circuit split or create it depending on how you viewed the unpublished decision. Is that correct? Potentially, yes, Your Honor. And I want to note one other difference between Lee and the cases before you all today. In Lee, again, an unreasonable delay case, but the applicants in Lee had visa numbers that were immediately available to them. So they were saying, our applications have been pending for however many months and we really want a decision. That is not the case here. The agency cannot make the decision that the applicants want because there are no visas available to them. So we can't even get to the unreasonable delay issue. There are visas available, but just not to them. Correct. There are visas available to people who have priority dates in the EB2 category, chargeable to India, that are before, I believe, March 1st, 2012. And the group does... Is it March or May? For February, it is March. And so, again, it changes month to month. And so those State Department predictions are just that. They are predictions. And so they're not perfect. So... Is the Ninth Circuit case that you argued, is that still subject to en banc or is the time run? I saw it was a December letter, so... Is the time run? It has not run. Well, counsel has requested a rehearing and the court has not yet either requested a response from the government or ruled on that. Counsel, Mr. Bonias wanted me to ask you, so I guess I'll do what he said. What is the difference between immediately available and available in the statutory scheme? I assume we're referring to 1255A3. And how is that relevant in this case? Immediately available and available, it's really a distinction without a difference. Why was the phrase immediately available used in 1255A3? Immediately available means that your priority date is essentially current or before the cutoff that the State Department has posted in whatever visa bulletin is for that particular month. And so... Yeah, I see it. Immediately available to him at the time of his application? Correct. And so a good way to kind of compare in that case is the regulation back in 1965 that allowed people to file before their priority date was current, that 90-day buffer. So by saying immediately available to him at the time of his application kind of brings us back to looking at the visa bulletin, seeing where your priority date falls. If it falls beforehand, you're good to file. And so this kind of also goes to the distinction between what's a visa versus what's a visa number. So immediately available to the applicant at the time he files his application means he is eligible to lodge that application. And should the processing be in his favor while that visa is immediately available to him, that application can be approved if, in the discretion of the Secretary, they decide to approve it. Visas being available again during a new fiscal year is just new batches of visas becoming available such that they can process those applications in that priority date order. Now, we've talked about the district. Did that answer your question? Do you have anything further? We've talked about the district court opinion in this case as being more robust and slightly different than the Lee case. Not more robust than the decision in the prior district court case and then also slightly different than Lee. Those are two unrelated statements. But what about the district court opinion that was the first one in the third case? Are you familiar with Judge Pittman's decision? Yes. And would the government, does that government believe that that's a correct articulation and that that's what we should adopt? So Judge Pittman's decision in the Coppola case is substantially similar to the decision in the Gupta case. Yes, because in fact, Judge Mazant relies upon Judge Pittman's decision to some extent. Correct. So do you, would the government be, does government think that's a correct opinion and would that be a suitable resolution from the government's perspective? Yes, Your Honor. We are of the position that this court does not have subject matter jurisdiction and the by which the government should be adjudicating these applications. The lack of that in any statute or regulation is fatal to the jurisdictional argument by the other side. Okay. But they didn't necessarily frame it in that way? Not necessarily. And again, Lee is an unreasonable delay case, whereas we have chiefly an unlawful withholding claim. But I do think that the reasoning in Lee is sound in that when there is no date certain and when there's no evidence in the statutory or regulatory text that Congress intended the agency to have a deadline by which to adjudicate an application, there is no discrete agency action under the APA. And so that translates to this case where it's even more significant that there's no deadline because there is no authority for USCIS to approve or adjudicate these applications when there's no visa number available. Do you have anything further? Just that the government really would like to just emphasize that there is a lack of subject matter jurisdiction. We don't really even need to get to Lee or the substantive arguments on the merits. And 1252 really resolves these cases. Thank you. Thank you. We have your argument. Do you have rebuttal? I do, Your Honor. Ms. Faso said that the agency cannot make the decision we want. That is not an exercise of discretion. That is a view that the statutes require. And I believe what she just said was there's no statute that authorizes them to make a decision on the adjustment of status application if there's no immigrant visas immediately available. I think that's looking at it backwards. There needs to be a statute that either requires there to be a visa immediately available at approval, not authority to make that decision. And so I do think that's a problem. I also think this now takes us out of 1252A2B2. They do not believe they have discretion to make the decision here. That cannot be a discretionary judgment action or anything. This idea that they're exercising discretion not to deny these, looked at the other side of the coin is they don't have the authority to deny it. Nothing in the statute or regulation says you have to have an immigrant visa immediately available at approval. And I would point you to 1252A2B2 has been the subject of a Supreme Court case called Kucana from 2010. Kucana says that if there's reasonably divergent interpretations, the tie goes to the plaintiff. The tie goes to subject matter jurisdiction. So to the extent we're struggling with this, the tie finds jurisdiction here. And then finally, this idea of whether the agency is required to make a decision on an adjustment of status application, I do believe that goes to Norton v. Suwa. So your hypothetical is about could they exercise discretion to refuse to make decisions based on whatever. I think the answer to that is Norton v. Suwa. And the answer to that is, is there a required and discrete duty to make a decision? And if so, they don't have discretion to refuse to do that. And here, they are required to. We cited to the regulations in our brief. And to the extent they say this aren't discrete decisions, you know, Norton v. Suwa was managing wild lands from, what is it, ATVs. And they wanted to protect the land. That's really broad. We have a receipt number. We know exactly what we want a decision on. There's no ambiguity there. It is as discrete as it gets. And I would point you to the Barrios-Garcia case where the agency there at argument said that if it was pending 100 years, that would be reasonable. And the Sixth Circuit disagreed in a nice, well-reasoned couple paragraphs. So I'd point you to those. And then the last thing I do want to note is this idea of discretion. Perhaps the argument is these are resources, and Congress hasn't given them money to do this. And so this is discretionary allocation of resources issue. I would just point out the agency's own materials say it takes two hours to make a decision on this. And that's touch time. That means an adjudicator in front of them, that's all it takes. And USCIS is fee-funded. So they don't rely on money from Congress. And they just raised the fee last week. So they do engage in increasing fees to ensure they can do these in a reasonable amount of time. And finally, this idea that immediately available and available is a distinction without a difference, I vehemently disagree. Okay. So I was going to ask you about that. So what do you say the difference is and how is it relevant in this case? Yep. So the statute requires it to be immediately available at filing. That's why it's relevant to this case. It doesn't say immediately available at approval. No, I thought the distinction was between available and immediately available, that there was some distinction in those phrases. It is. So immediately available means that you are before the date the Department of State publishes on its visa bulletin. Available just means there's still visas out there that haven't been used. So the only time in the last decade that the agency has actually used all the employment-based visas was in 2022. It's kind of what led to these cases. And they have until the end of September. On September 6th, they announced no more visas available. They ran out. And so I would say our position that on September 7th, we could not get a decision on the green card application because you have to have visas available. There have to be visas on the shelves in the store that is different than immediately available. And I think that distinction is incredibly important in this case. Thank you, Arshad. Can I ask a quick question? Maybe I could wait for the next one. But is Dada Vidadu in the Western District of Washington, is that your case too? D-A-T-T-A. Yes, ma'am. It was a consolidate with Bavaria for argument. Okay. So, okay. Because that's cited, you know, in Judge Pittman's decision as being the reason on the merits that you lose. Yes, Your Honor. And Dada was a P.I. that got denied. And I know I'm out of time, but just for what it's worth, I think Ms. Faso and I are in the Third Circuit on this issue. In March, the Fourth Circuit. Actually, that one just got moved. The First Circuit, the Eleventh Circuit. And that should all be in the next three to four months. A lot of those have been set. So in the Eighth Circuit, we're pending a decision. Interesting. Thank you. Okay. So.